## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **CHICAS ENTERTAINMENT, LLC** | § | |
| **d/b/a CHICAS CABARET AND** | § | |
| **PENTHOUSE HOUSTON, LLC** | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No._____** |
| | § | |
| **THE CITY OF HOUSTON** | § | |
|     **Defendant.** | § | |

## COMPLAINT

COMES NOW, CHICAS ENTERTAINMENT, LLC d/b/a CHICAS CABARET and PENTHOUSE HOUSTON, LLC, Plaintiffs in the above-entitled cause, and file this Complaint against Defendant, the City of Houston, and in support thereof would respectfully show the Court the following:

### SUMMARY OF THE FACTS

1.      Plaintiffs are Chicas Entertainment, LLC d/b/a Chicas Cabaret ("Chicas"), a gentlemen's club located at 9924 North Freeway, Houston, Texas 77037 and Penthouse Houston, LLC, ("Penthouse") located at 9930 North Fwy Houston, TX 77037, a newly-formed gentlemen's club in Houston.  Plaintiffs are Texas Limited Liability Companies with their principal place of business located in Harris County, Texas.

2.      As a result of ongoing litigation between the city of Houston and multiple adult entertainment establishments regarding city laws, the City of Houston ("the City") and sixteen adult entertainment establishments ("the Clubs") who did not operate as sexually-oriented businesses, but wished to operate as such, formed a settlement agreement ("the Agreement") on or about November 27, 2013, which was effective January 1, 2014.

1

3.       The Agreement between the City and the Clubs provides for the suspension of enforcement of provisions of Chapter 28 of the Houston Code of Ordinances regarding sexually-oriented businesses with respect to the select group of Clubs that would otherwise be applicable. In return for the Clubs' immunity from the ordinances, the Clubs annually pay the City nearly $100,000 and a share of their liquor sales.  This scheme amounts to commercial bribery and violates both state and federal law. *See* Texas Penal Code §36.02(a) and the Robinson-Patman Act, 15 U.S.C. §13.  The payments from the Clubs to the City would go into an account named the "Human Trafficking Abatement Fund."

4.       The Agreement is unlawful, unfair, and anticompetitive in nature.  The result is that the laws are selectively enforced against Chicas and Penthouse, while the select sixteen Clubs are exempt from the same laws.  The Agreement thus violates the Sherman Act, as it amounts to an anticompetitive restraint of trade.  The Agreement also violates the United States Constitution, as it denies the due process and equal protection clauses by enforcing the law only as to clubs that are not parties to the Agreement.

5.       As a result of the Agreement, Chicas' and Penthouse's business has suffered and will continue to suffer greatly.  The Agreement allows for the select sixteen Clubs, which are direct competitors of Chicas and Penthouse in the same market, to offer topless lap dances without regard to the City's "no touch" and "three feet" rules.  These types of dances are otherwise in clear violation of city law.

6.       The Agreement also exempts the Clubs from paying the otherwise mandatory five-dollar customer tax imposed by city law.

7.       Although the Agreement appears to disallow the operation of VIP rooms for private dances, which are blatantly in violation of city law, Clubs in the agreement have been

2

permitted to offer such services free from punishment.  Therefore, Chicas and Penthouse have

and will continue to lose business as a result of this unlawful scheme and could potentially

become unsustainable.

8.      Fantasy Plaza recently settled its case with the City and entered into a similar

agreement. *See* Exhibit A, attached hereto.

9.      Chicas and Penthouse hereby seek injunctive and declaratory relief, as well as

monetary damages, both actual and treble, costs, and attorney's fees.

<u>**JURISDICTION AND VENUE**</u>

10.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.  This

Court has jurisdiction over the federal antitrust claims herein under 15 U.S.C. §§1 and 15(a).

This Court also has jurisdiction in accordance with 28 U.S.C. §2201 and Federal Rule of Civil

Procedure 57 to issue declaratory relief.  This Court also has original jurisdiction under 28

U.S.C. §1343(a)(3), as some causes of action herein are asserted under 42 U.S.C. §1983 for the

reparation of deprivation under color of state law, of any right, privilege, or immunity protected

by the Constitution of the United States or by any Act of Congress which provides for equal

rights of citizens or persons within the jurisdiction of the United States.  This Court may also

exercise supplemental jurisdiction over any state law claims herein under 28 U.S.C. §1367(a), as

those claims "are so related to" the claims for which this Court has original jurisdiction "that

they form part of the same case or controversy under Article III of the United States

Constitution." 28 U.S.C. §1367(a).

11.      Venue is also proper in this Court, as Defendant resides in the State of Texas and

is found in this judicial district. *See* 28 U.S.C. §1391(b).  The events giving rise to the claims and

causes of action herein also occurred in this judicial district. *Id.*

## FACTUAL ALLEGATIONS

12.     The City of Houston entered into a settlement Agreement with sixteen adult entertainment establishments who did not operate as sexually-oriented businesses, but desired to operate as such, on or about November 27, 2013 and effective on January 1, 2014.  This settlement Agreement was reached in order to resolve outstanding ongoing litigation regarding city laws between the City and various adult entertainment establishments.

13.     The Agreement between the City and the Clubs provides for exemption of the clubs from certain city ordinances from the City of Houston Code of Ordinances related to sexually-oriented businesses and employees.

14.     Chicas and Penthouse have been denied the right to be a party to the Agreement first, because they did not have the adequate amount of money to pay the City and second, Chicas was denied the right to join the Agreement even when it did have requisite amount of money.

15.     The relevant ordinances are located in Chapter 28 of the Houston Code of Ordinances.  Article VIII §28-258(a) makes it unlawful for any entertainers to touch customers or customers' clothing while entertaining.  Subsection (b) of Article VIII §28-258 makes it unlawful for an entertainer to approach a customer at a distance of less than three feet while entertaining.

16.     Article XI §28-322 imposes a $5 tax on all customers who enter adult entertainment establishments.

17.     Article III §28-125 sets forth requirements for the distance that adult entertainment establishments must be from certain community buildings (1500 and 1000 feet distances).

18.     Article III §28-122 requires a permit for the enterprise for the adult entertainment establishment, and Article XIII §28-253 requires managers and entertainers to have permits.

19.     In return for the Clubs' immunity to the above-listed ordinances, the Clubs pay the City approximately $100,000 dollars per year, as well as an annual percentage of their liquor sales.  This scheme amounts to commercial bribery and violates both state and federal law.

20.     The Agreement is unlawful, unfair, and anticompetitive in nature.  The result is that the laws are selectively enforced against Chicas, Penthouse, and the other non-party clubs, while the select sixteen Clubs are exempt from those same laws.  The Agreement thus amounts to an anticompetitive restraint of trade.  The Agreement also violates the United States Constitution due process and equal protection clauses by enforcing the laws only against those clubs that are not parties to the Agreement.

21.     As a result of the Agreement, Chicas' and Penthouse's business have and will continue to suffer greatly.  The sixteen Clubs party to the Agreement are direct competitors of Chicas and Penthouse.  Only those sixteen Clubs are free to offer topless lap dances without regard to the City's "no touch" and "three feet" rules.  The Agreement also exempts the Clubs from paying the five-dollar customer tax imposed by city law.  Although the Agreement appears to disallow the operation of VIP rooms for private dances, which are blatantly in violation of city law, Clubs party to the Agreement have been permitted to offer such services free from punishment.  Therefore, Chicas and Penthouse have and will continue to lose a considerable

amount of business as a result of this unlawful scheme and could potentially become unsustainable, since they cannot offer the same services as the Clubs party to the Agreement.

22.     Chicas and Penthouse hereby seek monetary damages, both actual and treble, costs, and attorney's fees, as well as injunctive relief to stop the irreparable harm to which they have been subject as a result of the Agreement.  Chicas and Penthouse also hereby seek declaratory relief as to the Agreement as it amounts to an unlawful hindrance in restraint of trade and an illegal commercial bribery system.

## CAUSES OF ACTION

23.     Chicas and Penthouse hereby reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 21 of this Complaint.

## CONTRACT, COMBINATION, AND CONSPIRACY IN RESTRAINT OF TRADE

24.     15 U.S.C. §1 makes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations […] illegal." 15 U.S.C. §1.  The Agreement between the City and the Clubs is a contract and conspiracy in restraint of trade or commerce.  The Agreement permits only sixteen select Clubs to offer topless lap dancing and prohibits their competitors such as Chicas from offering the same services.  Moreover, Chicas and other non-party clubs have higher costs than the sixteen Clubs, because only the Clubs party to the Agreement are exempt from the $5 per customer tax.  The Agreement prevents fair competition in the adult entertainment market, putting Chicas and Penthouse, non-party clubs, at a severe competitive disadvantage.

25.     In return for their immunity to the city ordinances otherwise applicable to sexually oriented businesses, the Clubs agreed to each pay nearly $100,000 annually to the City, in addition to paying the City a 1.1% share of each Club's liquor sales annually.  The Clubs

jointly agreed to providing payment in order to ensure that the City received at least $800,000
per year.

26.     The Clubs and the City conspired to exclude Chicas, Penthouse, and the other
non-party clubs from the Agreement.  The Agreement provided a lucrative incentive to the
sixteen Clubs, since the Clubs would have the exclusive right to offer topless lap dancing
services, making them more profitable than their direct competitors like Chicas and Penthouse.
The Agreement also provided a lucrative reason for the City to contract with the Clubs per the
Agreement because of the great financial benefit conferred upon the City from the annual fee
paid by the Clubs and the City's share of the Clubs' alcohol sales.

27.     The Agreement, which excludes Chicas, Penthouse, and the other non-party clubs
from the benefits conferred upon the sixteen clubs party to the Agreement, is an unlawful
restraint on trade and violates federal antitrust law.  It also amounts to a scheme of commercial
bribery.  The purpose of the Agreement is to reduce competition by allowing only a select group
of clubs to offer select profitable services and forego the per customer tax, putting that group of
Clubs at a dominant competitive advantage compared to Chicas, Penthouse, and the other non-
party clubs in the adult entertainment market in Houston.  This hurts consumers, causes prices to
increase, quality to decrease, and may ultimately cause Chicas', Penthouse's, and the other non-
party clubs' businesses to fail.

28.     The City's motive for entering into the Agreement was to make a large profit in
exchange for giving the select sixteen Clubs a license exempting them from city ordinances.
This unduly burdens interstate commerce for live adult entertainment businesses and unduly
burdens competition in Houston's live adult entertainment market for no legitimate public
purpose.  Houston is a major tourist and business destination, and customers and potential

7

customers of Chicas, Penthouse, and other live adult entertainment clubs are often in Houston as a result of their traveling in interstate commerce and thus the Agreement has a substantial adverse effect on interstate commerce. Some of the entertainers even travel in interstate commerce throughout the year, working at different adult entertainment establishments across the country.

29.     Chicas and Penthouse have suffered and continue to suffer irreparable harm as a result of the Agreement.

**HORIZONTAL GROUP BOYCOTT**

30.     The sixteen Clubs party to the Agreement are horizontal competitors of Chicas and Penthouse. The Agreement is illegal in violation of the Sherman Antitrust Act, 15 U.S.C. §1, as a horizontal agreement among and between the Clubs and the City. The Agreement is a group boycott by the City and the Clubs, excluding Chicas, Penthouse, and other non-party clubs from the competitive market.

31.     The Agreement is a *per se* unlawful group boycott. The City and the Clubs effectively control access to the live adult entertainment market by exempting the Clubs from city ordinances, which diminish competition in the relevant market, putting the sixteen Clubs in the dominant position in the live adult entertainment market. The Agreement bestows upon the sixteen Clubs the exclusive right to offer topless lap dances and exempts them from the per person tax, which diminishes Chicas', Penthouse's, and non-party clubs' ability to effectively compete. Finally, the Agreement has no legitimate business purpose for doing so. *See Hahn v. Oregon Physicians' Service,* 868 F.2d 1022, 1030 (9th Cir. 1988) citing *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* 472 U.S. 284, 285 (U.S. 1985). Moreover, "[t]he per se rule is invoked when a challenged activity facially appears to be one that would

8

always or almost always tend to restrict competition and decrease output." *Hahn v. Oregon Physicians' Service,* 868 F.2d at 1024.  As explained more fully above, the Agreement absolutely restricts and hinders competition and decreases output.

32.     The City and the Clubs conspired together to exclude Chicas, Penthouse, and the other non-party clubs from the Agreement which would exempt them from the city ordinances prohibiting topless lap dancing and requiring a five dollar per customer fee.  This effectively denied Chicas, Penthouse, and the non-party clubs access to the input necessary for them to viably compete and raised their costs relative to the sixteen Clubs.

33.     In the alternative, the Agreement constitutes a horizontal group boycott that violates the doctrine of the rule of reason.  As set forth more fully above, the Agreement between and among the City and the Clubs is unlawful, as it is an unreasonable restraint on trade.

34.     The City possesses the sole monopoly authority to exempt clubs from city law, and it utilized this authority to elevate the sixteen Clubs to a prime position in the live adult entertainment market.

## SUBSTANTIALLY LESSENING COMPETITION

35.     The Agreement violates Section 3 of the Clayton Act, 15 U.S.C. §14 by substantially lessening competition.

36.     By allowing only sixteen select Clubs, which represent less than half (44%) of the adult entertainment establishments in Houston, to join the Agreement with the City, the majority of adult entertainment establishments (56%) were excluded.

37.     Permitting only sixteen Clubs to be exempted from the city ordinances substantially decreased competition in the relevant market by limiting the number of

establishments that can offer live topless lap dances and reducing Chicas', Penthouse's, and the non-party clubs' ability to compete.

## EXCLUSIVE DEALING

38.     The Agreement is unlawful on grounds of unreasonable exclusive dealing pursuant to 15 U.S.C. §1, as the Agreement permitted exclusively the sixteen Clubs to be exempt from the city ordinances, and not Chicas, Penthouse, and other clubs similarly situated.

39.     The expressly exclusionary Agreement substantially decreased competition in the relevant market by limiting the number of establishments that can offer live topless lap dances to a select sixteen Clubs and reducing Chicas', Penthouse's, and the non-party clubs' ability to compete in the relevant market.

## ESSENTIAL FACILITIES CLAIM

40.     The Agreement violates the essential facilities doctrine under the Sherman Act, 15 U.S.C. §2.  The City is a monopolist with the monopoly power to determine the Clubs who could partake in the Agreement and therefore the exemption from city ordinances, the facility—the exemption from the relevant laws—is essential for the ability to viably compete in the relevant market, the City controls who is exempt from its laws, the City excluded Chicas and Penthouse from the Agreement and thus the exemption, and it would have been practicable to permit Chicas and Penthouse to join the Agreement. *See Dealer Computer Servs. v. Ford Motor Co.,* LEXIS 23327, *9 (U.S. Dist Ct. S. D. TX—Houston Division 2006).

41.     The City expressly excluded Chicas and Penthouse from its Agreement with the Clubs, and subsequently denied Chicas' request to enter into the Agreement.

## ROBINSON-PATMAN ACT

42.     The Agreement violates the Robinson-Patman Act, 15 U.S.C. §13(c), as it constitutes a commercial bribery scheme.

43.     The Agreement provides for the Clubs paying the City a share of their alcohol sales in exchange for immunity from city ordinances.  This is an improper and unlawful reason for the City to receive money, as it does not constitute "services rendered in connection with the sale or purchase of goods, wares, or merchandise."  The City has effectively sold the Clubs licenses to violate city law.

44.     The Agreement has and will continue to devastate Chicas' and Penthouse's business, as they are not exempt from the 3 foot and no touch rules and thus cannot offer the same services that their direct competitors party to the Agreement may offer, which are highly sought after by customers, and thus their ability to compete in the live adult entertainment market has been largely diminished.

## EQUAL PROTECTION CLAUSE

45.     The Agreement between the City and the Clubs is a policy of the City.  It exempts certain select Clubs from city ordinances in exchange for money, but prohibits other direct competitor clubs such as Chicas and Penthouse from the same exemption.  The City has deprived Chicas and Penthouse of their rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution and civil rights statute 42 U.S.C. §1983.

46.     The City has no compelling, important, legitimate, or rational governmental interest in exempting some Clubs from city laws, but denying the same exemption to others. Furthermore, the Agreement is unconstitutional, as it unduly burdens Chicas, Penthouse, and other non-party clubs and the restraint is not rationally related to any legitimate governmental interest, nor is it necessary or narrowly tailored.

47.     The City's refusal to allow Chicas, Penthouse, and other non-party clubs to join the Agreement is due to its aversion and hostility toward Chicas, Penthouse, and other non-party clubs and has no legitimate reason.

## DUE PROCESS

48.     The Agreement violates both substantive and procedural due process under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

49.     The Agreement between the City and the Clubs constitutes a City policy.  It exempts certain select Clubs from city ordinances in exchange for money while prohibiting other direct competitor clubs such as Chicas and Penthouse from the same exemption.

50.     The licensing scheme created by the Agreement constitutes a deprivation of procedural due process rights for Chicas and Penthouse, as non-parties to the Agreement.  Chicas and Penthouse were deprived of their rights without an evidentiary hearing.

51.     The City has no compelling, important, legitimate, or rational governmental interest in denying procedural due process protections to Chicas and Penthouse in refusing to grant Chicas and Penthouse the same exemption as the Clubs.  The Agreement unduly burdens Chicas, Penthouse, and other non-party clubs and the restraint is not rationally related to any legitimate governmental interest, nor is it necessary or narrowly tailored.

52.     With respect to substantive due process, the Agreement and its licensing scheme allows a select group of adult entertainment establishments to be exempt from city law in exchange for payment, but for no reason refuses to grant the same right to other adult entertainment establishments in the same geographic location, such as Chicas and Penthouse.

53.     The City's refusal to include Chicas and Penthouse in its Agreement constitutes an abuse of power by a government.  The City even admitted that it meant to terminate the

business of the non-party "rogue" clubs in a comment made by a former City Attorney for no legitimate reason except for animosity towards those clubs.

54.     The arbitrary and capricious manner in which the Agreement has been implemented and enforced is an unlawful licensing scheme that does not treat similarly situated businesses equally.

## DAMAGES

55.     Chicas and Penthouse hereby reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 53 of this Complaint.

56.     Chicas and Penthouse, upon information and belief, estimate that the total actual damages caused by the City's unlawful conduct described herein exceeds $1 million dollars, inclusive of lost profits.

57.     Chicas and Penthouse are also entitled to treble damages as well as reasonable attorney's fees, pursuant to 15 U.S.C. §15.

58.     Chicas and Penthouse also seek injunctive relief, costs, and attorney's fees pursuant to 15 U.S.C. §26, since monetary damages alone are not sufficient to cure the harm to Chicas' and Penthouse's businesses.  Chicas and Penthouse request a Temporary Restraining Order under Federal Rule of Civil Procedure 56(b), as they will suffer irreparable harm if enforcement of the Agreement is not restrained.  Expiration or termination of the Agreement is not foreseeable and thus Chicas and Penthouse will continue to suffer irreparable harm to its business as long as the Agreement continues to be enforced.  Thus, harm to Chicas and Penthouse is actual and imminent.  Chicas and Penthouse have no other sufficient legal recourse or remedy for the harm to their good will, reputation, current and future profits, rights, and prospective customers are not easily quantifiable in money damages.  Furthermore, money

damages alone would not provide complete recourse.  Permanent irreparable harm would befall Chicas and Penthouse if the Agreement remains in effect.  Chicas and Penthouse respectfully ask that the City be restrained from engaging in the regulation of sexually oriented businesses as per the terms of the Agreement and exempting the sixteen Clubs from otherwise applicable city ordinances.  For this, Chicas and Penthouse are willing to post a bond.

59.     Likewise, Chicas and Penthouse request a permanent injunction prohibiting the City from engaging in the regulation of sexually oriented businesses as per the terms of the Agreement and exempting the sixteen Clubs from otherwise applicable city ordinances.

60.     Under 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, Chicas and Penthouse seek a declaratory judgment from this Court that the Agreement hinders competition and illegally restrains trade in violation of 15 U.S.C. §§1 and 2, violates 15 U.S.C. 13(c) and Texas Penal Code §36.02(a) as it amounts to an illegal scheme of commercial bribery, and it (as well as the denial of Chicas' request to also be exempted from the city ordinances) constitutes a violation of Chicas' and Penthouse's due process (procedural and substantive) and equal protection rights under the 14th Amendment to the United States Constitution and 42 U.S.C. §1983.

## CONDITIONS PRECEDENT

61.     Chicas and Penthouse hereby confirm that all conditions precedent to the filing of this lawsuit have been fulfilled or have occurred.

## PRAYER

Chicas Entertainment, LLC d/b/a Chicas Cabaret and Penthouse Houston, LLC, Plaintiffs herein, respectfully request that the City be cited to answer and that judgment be entered against it and in favor of Chicas and Penthouse for actual and treble damages, any special and

consequential damages, declaratory relief, temporary and permanent injunctive relief,

prejudgment and postjudgment interest, costs, attorney's fees, and any and all such other and

further relief to which Chicas and Penthouse may be justly entitled to both in law or in equity.


Respectfully submitted,


**MARKLE • DELACRUZ, LLP**


By: _____

Spencer G. Markle
Attorney-in-Charge
State Bar No. 12989200
spencer@markledelacruz.com
700 Gemini Avenue, Suite 240
Houston, Texas 77058
(281) 486-0677 Telephone
(281) 486-0694 Facsimile
**ATTORNEY FOR PLAINTIFF CHICAS
ENTERTAINMENT, LLC D/B/A CHICAS
CABARET AND PENTHOUSE HOUSTON,
LLC**